and Shanmugam of Paul Weiss for the appellants. May it please the Court, in this case, like dozens of others around the country, a state or local government seeks to impose liability on energy providers for injuries allegedly caused by global climate change. This case presents the question whether or not cases like this belong in federal or state court. And in our view, federal jurisdiction exists over Minnesota's claims for multiple reasons. To begin with, Minnesota's claims are governed by federal common law. However Minnesota seeks to frame its theories of liability, it is seeking redress for injuries allegedly caused by global climate change. And its theory of causation is based on worldwide greenhouse gas emissions. As the Second Circuit recently held in the City of New York case, where a federal common law necessarily governs those claims. Does it matter? Wasn't that a nuisance case, if I remember, out of the Second Circuit? And this is expressly not a nuisance case. Why doesn't — doesn't that distinction matter? It doesn't, in our view, for purposes of this question, whether or not federal common law governs, for the simple reason, Judge Kobus, that what Minnesota has sought to do here is deplete its claims as consumer deception claims and thereby focus on an earlier stage in the causal chain. But the fundamental reason, in our view, why federal common law applies is because the theory of causation depends on worldwide greenhouse gas emissions, as the Second Circuit said in the City of New York case. A plaintiff cannot, quote, whipsaw between disavowing any intent to address emissions and identifying such emissions as a singular source of the city's harm. And if you look at the State's — On that — on that point, are there any — are there any claims that could survive dealing with global climate change? So — or is it all covered by the federal common law? So I wouldn't want to rule out the possibility that a plaintiff could bring a more modest claim. I think that that claim would have to seek, at a minimum, it would have to seek remedies that are more like traditional remedies in a misrepresentation case. But that's not what's going on here. And the best evidence of that is plaintiff's complaint and plaintiff's litigation conduct. If you look at the complaint in this case, it is very candid about what it is seeking. The very first paragraph of the complaint says, Minnesota is in the midst of a climate change crisis. And there are 17 pages, 17 pages in the complaint, of allegations about the various harms suffered by Minnesota as a result of climate change. And if you take a look at the transcript of the hearing before Chief Judge Thunheim, I think that the State's comments at that hearing are very instructive. Time and again, Chief Judge Thunheim asked whether or not the State was seeking to recover for harms caused by climate change. And the State was very candid about saying, for instance, at these misrepresentations and these violations of Minnesota law, climate change has been exacerbated. And so, look, I think it would be a matter, Judge Ross, of what the plaintiffs are actually seeking in the complaint. And I'm certainly not going to stand here and attempt to plead a claim that might be subject to State jurisdiction. But I think, whereas here, the theory of causation and harm centrally rests on worldwide greenhouse gas emissions, that the principles that the Court has articulated for more than a century in the context of interstate pollution apply. Indeed, I would submit that they apply with even greater force in the context of climate change, which implicates not just relationships between States, but inherently national and, indeed, international activities and interests. And again, we would point the Court to the Second Circuit's decision in City of New York as sort of the closest precedent from a sister circuit on point. While that was a case that was originally brought in Federal court, the claims that were originally brought were State law claims. And the Second Circuit engaged in exactly the analysis that we would submit is appropriate in cases like this. First it determined that Federal common law supplies the source of law. That's really akin to a choice of law analysis, not very different from the kind of analysis that this  There was a car accident in North Dakota, and a plaintiff brought a claim under Minnesota law. A court would determine first. Where do you think the Federal common law on interstate pollution comes from? It seems that the Court has picked out certain areas and arbitrarily said, this is Federal common law, and under Erie, this is not Federal common law. Where do you think it comes from in this instance? So I don't think that it is arbitrary, Judge Strauss. It comes from the test, the familiar test articulated by the Supreme Court in the Texas Industries case, which is, of course, whether or not a Federal rule of decision is necessary to protect uniquely Federal interests, including where the interstate or international nature of the controversy makes it inappropriate for State law to control. And that's been the test for a long time, post-Erie, and there have been very few areas in which the Supreme Court and other courts have applied Federal common law. Now, if you're asking me as a matter of first principles, where does all of this come from, I think at least in this context that there is a real constitutional component to it. And let me explain why I think that that's true. I think what you have in a case like this is a State essentially attempting to project its regulatory policies outside its boundaries. And, Judge Kovas, to get back to your first question, that's why I think the fact that the theory of causation depends on worldwide greenhouse gas emissions is so important, because that's what takes this outside the realm of a traditional consumer deception claim of the sort with which we're all familiar. You know, if an oil company made, you know, misrepresentations that its gasoline would clean someone's engine and, in fact, that turned out not to be true, that feels like the grist for a more traditional consumer deception claim. So it's sort of a quasi-dormant commerce clause type of analysis, then? Well, I don't think so in the sense that I think that this goes to sort of fundamental constitutional structure, so this is not something that is a penumbra of some specific constitutional provision. But, again, I think what's so sort of problematic about this is that if these sorts of cases are allowed to proceed in State court, what States are going to be doing is using State law, again, to regulate activity, not just nationwide, but internationally. And, again, I don't think it could be clearer from the complaint that that is Minnesota's theory here, but I would point the Court in particular to paragraphs 174 and 175 of the complaint, which are at Appendix 86, which makes clear that the theory of harm here is that the production and use of fossil fuels worldwide caused substantial damage to the State of Minnesota. Suppose that the complaint was narrower. Suppose the complaint just focused on emissions within Minnesota and tied it to specific emissions from these companies in Minnesota. Would we have a different case here? I think that the fundamental problem, Judge Strass, I mean, maybe, but I think the fundamental problem, Judge Strass, is that the plaintiff itself has acknowledged and acknowledged at the hearing that it was impossible to do that. And we make that point, I think, in the activities that took place under the direction of Federal officers, but I think that the same point applies with regard to Federal common law here. Again, the injuries that are caused here, climate change-related injuries, the alleged injuries are conceivably, on Minnesota's view, a result of activities that take place worldwide. There's no way to say, well, it's only these emissions in Minnesota that cause Minnesota-specific damages. If we agree with you, are we creating a circuit split with the Tenth in the Boulder Three case, or is there a way to distinguish that case from ours? So I would respectfully submit that that circuit conflict exists already by virtue of the Second Circuit's decision in the City of New York, really in two respects. I think the first respect is in the application of Federal common law, and the Tenth Circuit essentially said that Federal common law did not exist as a result of displacement by the Clean Air Act. I think the fundamental problem with that reasoning is that it combines the question of the source of the law with the substance of the law. The question of whether or not once Federal common law applies, a cause of action can go forward is a question on the merits that would go to a motion to dismiss. And again, I don't think that the Tenth Circuit's rejection of Federal common law can be squared with the Second Circuit's decision. The other aspect of the Tenth Circuit's decision that I think is problematic is that the Tenth Circuit seemed to suggest that even if Federal common law applies, it can't be a basis for removal. And as we point out in this case, pointing to this Court's decision in Otter Tale, but also to authority from the Supreme Court, including the Oneida Indian Nation case, once you conclude that Federal common law applies and provides the rule of decision, the claim arises under Federal law and not State law. As I indicated earlier, it's sort of akin to a choice of law question. And once that's true, I think it follows that the case has to be removable. So we think that there is a circuit conflict already on those issues. I — my client, Exxon Mobil, intends to seek Supreme Court review from the Tenth Circuit's decision. And so in some sense, this Court will be weighing in on an issue on which, in our view, there already is a circuit conflict. And, of course, there are a number of these other cases pending in other circuits around the country. And so I think, quite frankly, that there's a very high likelihood that sooner or later these issues will end up in the Supreme Court. And I do think that the Federal common law issues in particular are issues on which we would rest not just on the Second Circuit's decision in the City of New York, but obviously fundamentally on the body of case law that the Supreme Court has already developed in the area of interstate pollution. This is the one area in which the application of Federal common law is actually quite well established in Supreme Court precedent. Counsel, what role do national security concerns play in determining whether Federal common law applies? So I think that they are essentially supplemental here. We point to sort of two aspects in which this case, again, is a stronger case for the application of Federal common law. One of them is the sort of foreign affairs component of which national security is clearly a part. And we set out at great length in our brief the long history of a national sort of attention to the issue of climate change and energy production and, of course, the long history of international negotiation on that subject. In addition, we think that there is a sort of aspect of this that is, again, sort of supportive, and that is the fact that these claims relate to Federal navigable waters. That's another area in which Federal common law has historically applied. We also make the argument that for purposes of our second argument on Federal jurisdiction, our argument under Grable that this case, that these claims necessarily raise substantial and disputed issues of Federal law, that the claims here would require a court to assess and essentially second guess the balance that Federal actors have struck between energy production on the one hand and environmental protection on the other. That would certainly be an alternative basis for Federal jurisdiction. On that point, I want to ask about a litigation decision, which is in reading the Second Circuit decision, Judge Sullivan covers something in footnote 7 I was wondering about during reading the entire opinion, which is why not rely on the Clean Air Act? You could have made a Clean Air Act argument based on in Grable, and instead we have the Federal common law argument. So I think that the Clean Air Act really goes to either preemption or displacement, Judge Strauss. And the way that we think that this should work is that if this Court concludes that Federal common law supplies the rule of decision for jurisdictional purposes, of course that's not the end of the case. The effect of that would simply be for the case to go back to Chief Judge Thunheim. And at that point, I think that the specific question that Judge Thunheim would have to confront is whether or not any cause of action under Federal common law is displaced by the Clean Air Act. And I think that that's really the right way to sort of think about this. And there's nothing sort of troubling or problematic about the fact that this is a two-step analysis. Well, and that relies on the fact that it's not completely preemptive, right? I mean, the argument would be it's ordinary preemption, and therefore it doesn't independently give rise to jurisdiction, right? That is correct. So we are not, before this Court, making a complete preemption argument under the Clean Air Act. We've made that argument in other cases as an alternative basis for Federal jurisdiction. We did not make that argument here. But I think that the critical point, and I think the Second Circuit's opinion is certainly consistent with what I'm about to say, is that we don't believe, contra my friends on the other side, that complete preemption provides the only or exclusive basis for defeating an effort to plead claims under State law. There's simply no authority for that. And again, we cite ample cases, including the Otter Tail case, for the proposition that where Federal common law supplies the rule of decision, Federal jurisdiction is appropriate. And again, I think the right way to think about this is much like a choice of law question between two States. In other words, the question here is, you know, where is the source of Federal law? Is Federal law? It follows that the claim arises under Federal law for purposes of jurisdiction under Section 1331. So just a couple of further points on Federal common law, and, of course, I'm happy to answer the Court's questions on other issues. I think I've set out the affirmative reasons why we believe that Federal common law applies here. Again, if Federal common law applies, the next question is whether that provides a basis for Federal jurisdiction. We think that this Court's decision in Otter Tail governs that question, because in that case, the Court was relying on Federal common law as the basis for, as the law that would control the claim, and the Court unambiguously concluded that that provided a basis for Federal jurisdiction. That is consistent with the law of numerous other circuits, and I would point the Court in particular to the Samuel Majors decision from the Fifth Circuit, which I think sets out that principle perhaps in somewhat more detail. But ultimately, we think it's supported by the Oneida Indian Nation decision from the Supreme Court and also the Standard Oil decision from the Supreme Court as well. One other point I would make on that second question is that if the Court for some reason doesn't agree that Federal common law itself can provide the basis for Federal jurisdiction, one alternative option would be for the Court to conclude that Grable provides a basis for Federal jurisdiction based on Federal common law, because if Federal common law applies, it would itself provide the substantial issues of Federal law for purposes of Federal jurisdiction. I see that I'm getting into my rebuttal time. Unless the Court has any questions about our other grounds for Federal jurisdiction here, Federal officer removal, OXLA, and the Class Action Fairness Act, I'd be content for now to rest on our briefs. Roberts. All right. Thank you, Mr. Shanmugam. Shanmugam. Thank you. Roberts. Mr. Shanmugam, you may just wait just a moment. I would remind counsel we're going to wipe down the podium between speakers, so it will be just a brief pause. All right. Mr. Sherry, you may proceed when you are ready. Good morning. Thank you, Judge Groth. May it please the Court, I'm Vic Sherr. I represent Plaintiff and Appellee State of Minnesota. With me at counsel table is Pete Serto from the Attorney General's Office. The arguments that you've heard today and that defendants have been making in this case turn the well-pleaded complaint rule upside down and reverse the Supreme Court's repeated and consistent, quote, deeply felt and traditional reluctance to expand the jurisdiction of Federal courts through a broad reading of jurisdictional statutes, which serves to keep State law actions in State courts, and thus to help maintain the constitutional balance between State and Federal judiciaries. That's from the Merrill Lynch v. Manning case that we discussed at length in our briefs. Big cases do not make Federal jurisdiction. And the Court has been, the Supreme Court has been very clear that the way to think about the case is whether the well-pleaded complaint raises any necessary and substantial Federal issue that can be assumed by the Federal courts without upsetting the Federal-State balance. Counsel, what about your colleague's suggestion that your theory of causation necessarily crosses that boundary because it relies on interstate and, in fact, global emissions? It does not, Your Honor. Isn't that baked into kind of your theory and your theory of damages? Emissions are part, as the Fourth Circuit said, they are part of the avenue of delivery of the injury. They are not the source of tort liability. And this is very important to be clear about. This complaint cabins carefully to the deceptive conduct and the failure to warn. And our burden at trial will be to prove that there was a failure to warn and that there was a deceptive course of conduct and that it mattered. If we fail in that proof, it doesn't matter how many emissions there are. We have no claim. We have no damages. And we have no recovery. How do you calculate damages, assuming you prevail on liability? Well, that will be a matter for proof on the merits at trial. And we have a variety of different ways. Science allows us to allocate emissions and link them to certain impacts. And And those impacts would be limited to the State of Minnesota? Oh, yes. Oh, yes, Your Honor. The idea that we're seeking recovery for climate change generally, not true. It's for the injuries within I thought your colleague suggested that there was evidence below that you could not kind of limit the effects of climate change to the State of Minnesota. I maybe misheard that. He did say that, Your Honor, but it takes the comments of counsel below out of context. The only impacts that matter here are impacts to the State of Minnesota. And those are those support the only damages analysis that would occur. And those impacts and those damages are limited to those that we are able to show there's a causal connection to the misrepresentation and the failure to warn, just as in any other tort case. Well, aren't Oh, go ahead. I had the same question, counsel. And so if you were successful in establishing liability, the damages would not be calculated on their activities, for example, on the Outer Continental Shelf? No, Your Honor. They would be the jury would be asked, was the deceptive conduct and the failure to warn a substantial cause of the State's injury? How are you going to separate? Well, I guess maybe that's not something we worry about, but you would have to separate somehow the That's right, Your Honor. global activities versus Minnesota. No, we don't have to separate the activities. We have to separate the deception from all other conduct that contributes to the activity. And these are backward looking tort claims. They're not efforts to regulate future conduct other than that they can avoid liability when they start telling the truth and warning. But that's the standard. And as Judge Thunheim below, as well as Judge Stark in the district court in Delaware said, you cannot have a Federal court jurisdictional hook based on the speculative impact of a future judgment that may or may not affect behavior in different ways. It's just too remote. You know, I don't know if you're right that this is a carefully crafted complaint. I'll just read you a few parts of it. And it goes to Judge Kobus' question. It alleges, for example, that the company's collective conduct, quote, caused a substantial portion of global atmospheric greenhouse gas concentrations. That's Appendix 86. It says the State asked for redress for alleged injuries such as flooding, harm to forests, and degradation of infrastructure. And it claims greenhouse gas, air pollution, emissions, and climate change more than 300 times. While at the same time, at least from what I can tell, there's only a single alleged misstatement from David Koch supporting the claims. So I don't quite know how you can say that this is not about interstate pollution. Your Honor, if you look at the complaint as a whole, as the Fourth Circuit did and as the Tenth Circuit did, what you see is that perhaps we exceeded the burden of But the cause of action rests on deception and failure to warn. That's the source of the tort liability. But aren't the damages about damage to the environment? In Minnesota, yes. And science allows us to segregate. In part, it's this way. Think of it this way, Your Honor. If you know a volume of emissions, you can calculate the impact locally of certain environmental impacts like flooding and temperature rise and things like that. And only the portion of those impacts that the jury finds are attributable to the deception and the failure to warn is part of the lawsuit. There's a lot of discussion in their papers, for example, about World War II. Well, the complaint is very clear that the period of culpability doesn't start until the mid-1960s. So World War II and Korea don't have anything to do with this case. There's a lot of talk about fossil fuel sales to the government for military purposes, and we have disclaimed. Counsel misused the term. There is not a jurisdictional disclaimer. There is a claim disclaimer, and that is fully enforceable in the best discussion. I was just going to ask, are there any other alleged misstatements that I'm missing from, you know, I mentioned the one by David Koch. I didn't find any others in the complaint. Is there anything else in terms of specific misstatements? By David Koch? By anybody. Sure. There's a description of what the companies knew at different times and what they said publicly and how they invested in their own infrastructure while telling the world that there was no need to respond to climate change and that climate change was chicken little and things like that. We have pictures of the ads in there. And then they've morphed more recently into a form of greenwashing, which presents them falsely as being part of a solution. But these are our burden to prove on the merits. And there were several questions from your honors about potential circuit splits. The way there's not a circuit split is the way both the Second Circuit and the Tenth Circuit have dealt with the differences between the discussions. The Second Circuit said, we're not at all inconsistent. At that point, all they had was the Ninth Circuit's decision in Oakland, which said that there was not a substantial Federal question on the face of the well-pled complaint that would support removal. And the Second Circuit said, well, the devil is in the procedural details, because the question is different when you're talking about jurisdiction, which is the question before this Court, as opposed to the merits of a preemption defense, which is what the Second Circuit was dealing with. And the Tenth Circuit said the same thing. They said, we're not inconsistent with what the Second Circuit did, because as a matter of removal jurisdiction, there's no necessarily raised substantial question. And so that's how there is no conflict, because they're addressing different issues. We submitted a 28J letter with respect to a State court decision on preemption in the Honolulu case from Hawaii, finding that there was no preemption on deception-based claims. And this is a fundamental difference. So just to follow up on that, you would suggest that we would create a circuit split if we ruled against you in this case with the Tenth Circuit, is that correct? If we ruled against you. Yes. Okay. The Tenth Circuit and the Ninth Circuit on this issue of arising under jurisdiction under Section 1331. Under jurisdiction. Okay. Thank you. Yes. You know, to add to that, I wonder if we really would. And the reason why I say that is Grable. Here, and this is why I asked opposing counsel about the Clean Air Act. Here you have the federal common law in the background, at the very least. It's sitting there in the background. I think even the State would admit that, but you can certainly disagree with me. And people disagree. I think you all disagree about whether it governs this particular case. But then you add the Clean Air Act and the fact that counsel basically says we're going to walk into court and argue that the Clean Air Act preempts most of the claims here. And I wonder whether Grable covers this. This is — it seems like the entire case is about Federal law, even if there's this one small component about — of State misrepresentation, which would then require us to get into all these issues of Federal law. What's your response? Your Honor, there's two responses, at least. Maybe I'll think of some more as I'm talking. Sure. The first is, there is no element of any of the State law claims here where, if you look at our Prima Fasci case, there's a Federal element to it at all. That is, the adequacy of warnings is determined by State law. The existence of fraud is determined by State law. The only way there's a Federal issue in this case at all will be when a court engages on the merits and there is a motion to dismiss for Federal preemption, whether it's under Federal common law or the Clean Air Act. That's a defensive move and a defensive preemption cannot support removal. That's black letter. And you cannot go behind the complaint in the absence of a complete preemption claim. And there's no — counsel has conceded there's no complete preemption claim here. The language of governs, controls, that is preemption euphemism. And — but if you look at the Prima Fasci case, which is what you have to do under Grable and its progeny, there is not — look, there is no challenge in this case to any omissions by anyone anywhere, nor to any permit or any statute or any regulation of omissions. Let me ask a question more broadly. It seems as if, at least implicitly, this particular cause of action or this complaint requires sort of a cost-benefit analysis. It will require us to sort of balance what these particular oil companies have done. And it appears to me that the exact same thing is what the federal government does in the Clean Air Act. So is there some — you say there's no conflict, but isn't there a conflict with regard to the requirements that would be placed on the companies because of this particular cause of action? By you would have to consider? You mean this Court on this jurisdictional question? No. My point is, you know, the jury. When the cause of action goes down, essentially you're asking the jury to make a determination that's just like the determination the EPA has to make in regulating greenhouse gas emissions under the Clean Air Act. No, Your Honor. Again, two responses. First, there is no Federal interest in lying or failing to warn. That's just not part of the Clean Air Act or any other statute that applies here. Those are State common law duties. The Supreme Court has said in cases where States were making claims that affected out-of-State conduct, that truth in the marketplace and deceptive conduct and those kinds of things are matters of core State interests. And so there is no — there's certainly no unique Federal interest in that that in any way conflicts with the State interest in it, which is a precondition to Federal common law existing in the first place. But those are merits questions. Federal common law is a judge-made law, and once it's been displaced — this is my second point — once it's been displaced, the clear direction from the Supreme Court in the AEP case, from the Ninth Circuit in the Kivalina case, from the Supreme Court in the Milwaukee II case and Ouellette, is that once it is displaced as a matter of the relationship between Federal common law and statutory law, it no longer exists, period. And so there's the statement at the end of AEP where the unanimous Court said that the availability, vel non, of a State remedy here depends on the preemptive effect of the statute. And in Ouellette, under the Clean Water Act, that was a matter of ordinary preemption, and the Court held that an out-of-State source of pollution had to be regulated under a — that was permitted had to be regulated by the law of that State. And here, it would be a matter of ordinary preemption, but that can't support removal. And that's the first point on that. The second point on that is, as the Court in Honolulu found, the New York City case addressed emissions in the following sense. The City's claim in that case was one based on the lawful conduct of the — of the defendants, and doing ordinary commercial conduct, and it imposed strict liability, and the only way the defendants could comply with an adverse judgment would be to cease producing and selling their products altogether. And they said, under those circumstances, there was regulation of emissions, and that was what the basis for preemption was. In the Honolulu case, and in this case, the conduct that's being complained of is unlawful because of unlawful conduct. There's no liability once they cease that, and they are free as a matter of the judgment in this case to continue producing and selling their product as much as they're able to. It doesn't matter the volume of emissions. This goes back to Judge Gross's original question, I think, about aren't we seeking to regulate emissions through this case, and it's not. Judge Thunheim was exactly right when he said that the goal of this case is far more modest. It is to take out the deception related, which is causing the injury. That's our burden of proof at trial, and we'll be there. If you look at cases like Boyle and Muray versus DeKalb County, Georgia, and Empire Health Choice, what you find is that where you have even very, very important national interests in Federal aviation, in airplanes, airport safety, or in health care of Federal employees, and things like that, that does not create Federal common law. And Judge Easterbrook's decision from the Seventh Circuit in the Bennett case, he said that the presence of a Federal issue, even an important Federal issue in a case, does not support removal jurisdiction absent substantiality and not upsetting the balance of Federal and State courts. In re Ottertale applied, if you read that decision, it applied a precursor to the Grable case. And Grable, importantly, was intended to bring order to what the Court called in Gunn the Jackson Pollock canvas of jurisdictional law. And it did that by saying you look at the prima facie case alleged on the face of the complaint, and if there is an only if there is a necessary Federal element, meaning that there is no way that the plaintiff can prove its case absent that as a prima facie matter, then you have removal jurisdiction, but only if it's substantial and only if it doesn't upset the balance between State and Federal courts. And this case violates all of those precepts and would turn this rule on its head. And there's no basis for oh, I'm sorry, I didn't finish my point about in re Ottertale, which is the reason that there was a Federal common law issue in that case that supported removal jurisdiction was pursuant to the necessary Federal issue analysis. And the Court said that the effort to enforce a prior judgment that had centered on tribal law and reservation law and was necessarily Federal for that reason supported removal. Sam L. Majors was the same way. It was an area in which Congress had actually legislated and said, we preserve the Federal common law with respect to losses by common carriers, and so the Court said that that was the issue that would have to be determined in the case. It predated Grable, but there was a necessary issue in the case that was the sole question presented. All of the other cases that they rely on where Federal common law played a role, Oneida is the same way, it was there because either the plaintiff's claim affirmatively raised it, and therefore there was no issue of did it fit within the complaint or not, or it was a necessarily raised element based on the plaintiff's ability to prove the case. I see my time is running out, and we'll submit on the papers for the other questions. All right. Thank you. We'll just have a brief pause for the cleaning. All right. Thank you. You have 3 minutes and 23 seconds left for rebuttal. Great. Thank you, Judge Gross. Just 3 points on rebuttal. First, my friend, Mr. Scher, says that the relevance of worldwide greenhouse gas emissions is, in his words, limited to, quote, the avenue of delivery of damages. That's just another way of saying that it is the theory of causation. And, of course, causation doesn't just go to the amount of damages. It's an element of the claim. And, yes, sure, Minnesota is seeking to recover for injuries that Minnesota itself has suffered within its borders. But the critical point is that those injuries were injuries on Minnesota's own theory that were caused by global greenhouse gas emissions worldwide. And I can do no better than to point to the paragraph of the complaint that Judge Strauss pointed to, paragraph 175, where Minnesota says, quote, defendant's conduct caused a substantial portion of global atmospheric greenhouse gas concentrations and the attendant disruptions to the environment and injuries to Minnesota associated therewith. Second, my friend, Mr. Scher, sets great store by the fact that in this case, unlike many of the other cases that he has brought, the claims are limited to claims concerning misrepresentations rather than claims concerning nuisance and trespass, claims that are something of a fig leaf. And for the reasons that were, I think, well illustrated in the colloquy with Judge Strauss, this case is clearly not about consumer protection. With regard to Flint Hills and the Flint Hills defendants, there is only the one identified statement of opinion. It's, again, a statement of opinion, so it's constitutionally protected. And it's not even attributable to Flint Hills. And that's the statement at page 53 of the appendix. And so, again, that illustrates that this case is precisely the sort of case that the Second Circuit said should belong in Federal court, a case that is about global greenhouse gas emissions. I would also note that the damages that are being sought in this case are far broader and the relief that's being sought is far broader than the relief that would be sought in the paradigmatic traditional consumer deception case. And I would point in particular to the fact that the State is seeking really unlimited restitution and injunctive relief. That's at pages 97 to 98 of the appendix. And, again, I would encourage the Court to review the transcript of the hearing before Chief Judge Thunheim, at which Mr. Scher's co-counsel, Ms. Curry, time and again refused to limit the relief that was sought to the relief that would be more traditional relief in a fraud or other consumer deception action. And the last point I would make is that in terms of the right way to think about this, which was the subject of a lot of discussion during Mr. Scher's argument, we think the right way to think about this is that Federal common law supplies the rule of decision. It is not simply a defense, as would be the case with a traditional preemption defense. So State law supplies the rule of decision, but, nevertheless, there's a Federal interest that explains why the case should not go forward. And I think that Judge Sullivan's opinion for the Second Circuit is very sort of thoughtful in this regard, not just footnote 7, but also in the text of the opinion, which is why the Court went on a great length to discuss Federal common law before getting to the question of whether or not there is displacement. But ultimately, whether or not the Court thinks about this in terms of Federal jurisdiction resulting from Federal common law or the application of Grable, the outcome, of course, should be the same. And I think that the Court appropriately could look to the Clean Air Act as underscoring the extent to which there is a Federal interest here. I don't think it gets you all the way there in terms of Grable and why there is a substantial Federal interest. Ultimately, we think that that's because of the application of Federal common law. But the Court could certainly point to the Clean Air Act as just further evidence of the common-sense proposition that this is an area in which there is a profound and very broad Federal interest, which is why this case belongs in Federal court. Thank you. I'd like to thank both counsel.